[S. F. No. 8513.    In Bank.—August 12, 1918.]

PANAMA–PACIFIC INTERNATIONAL EXPOSITION COMPANY (a Corporation), Respondent, v. PANAMA–PACIFIC INTERNATIONAL EXPOSITION COMMISSION OF THE STATE OF CALIFORNIA, Appellant.

PANAMA-PACIFIC INTERNATIONAL EXPOSITION—CONTRIBUTIONS TO—CONSTITUTIONAL PROVISION, STATUTE, AND CONTRACT FOR—RULE OF CONSTRUCTION.—In construing the constitutional provision, statute, and contract providing for contribution by the state for the Panama-Pacific International Exposition, all intendments are in favor of the sovereign power; and the rule of interpretation is that if any ambiguity exist in the language of the constitutional provision or of the laws or contracts enacted and entered into in pursuance thereof, because of uncertainty in the language or of conflicting provisions in the different parts thereof, and two or more interpretations equally reasonable are deducible therefrom, that one is to be taken which is favorable to the state, rather than either of those which are against it.

ID.—PUBLIC COMMISSION—GRANT OF POWER TO—RULE OF CONSTRUCTION.—Where a public commission is granted power over property of the state, and the language of the grant contains terms which qualify the power, the qualifications are to be construed as conditions beyond which the grantee of the power cannot go, in so far as such qualifications are favorable to the state.

ID.—EXECUTION OF CONTRACTS—AUTHORITY OF COMMISSION—CONSTITUTION MANDATORY.—The provision of the constitution authorizing contribution by the state to the Panama-Pacific International Exposition, which directed the commission therein provided for to make "proper contracts" for the purpose, that is, such contracts "as will entitle the state of California to share proportionately with the con-

tributors to the said Panama-Pacific International Exposition in the returns from the holding of said Exposition," was mandatory, and it required that such contracts should be of a character which would secure the object expressed, limiting the power of the commission to that extent, and the commission had no power to make a contract which did not entitle the state to share "proportionately with the contributors," or one which would give to the state less that its proportionate share of the returns.

ID.—CONTRIBUTORS—WHEN NOT ENTITLED TO SHARE IN RETURNS.—San Francisco having made its donation outright to the Panama-Pacific International Exposition, without exacting the condition that it should have any share of the returns, although a contributor, is not one entitled to a share or interest in the returns; hence neither the state nor the exposition company is required to share the surplus with San Francisco.

ID.—PARTIES ENTITLED TO SHARE IN RETURNS.—The only contributors to be taken into account, in determining the proportionate share of the state in the returns of the Panama-Pacific International Exposition, are those who are themselves entitled to share, those who may lawfully share "with" the state and the company in the returns.

ID.—CONSTRUCTION OF CONTRACT.—The specific provision of the contract executed by the Exposition Commission to the effect that the state should receive in distribution of property, dividends, or surplus of the Exposition an amount bearing the same proportion to the total amount of assets, property, dividends, or surplus as the total contributions of the state should bear to the sum total of all contributions from all sources, was directly contrary to the constitution and hence void, as it required all the contributions to be counted in ascertaining the proportion, and all of them to be excluded in the division except those of the state and of the company, under which the state would be entitled to only five-sixteenths of the total surplus, the company being entitled to all of the remainder, while the state should be entitled to five-elevenths of the net returns.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche, for Appellant.

Brittain & Kuhl, and Curtis H. Lindley, for Respondent.

SHAW, J.—This is an agreed case submitted to the superior court for the purpose of obtaining a determination of the proportion to which the state is entitled of the surplus

of assets remaining for distribution on the final settlement of the affairs of the Panama-Pacific International Exposition. The length of the names of the parties and their similarity tends to verbosity and confusion. For the sake of brevity and clearness we will hereafter call the plaintiff the Company and the defendant the Commission. The Company claims that the state's share of such surplus assets is only five-sixteenths thereof. The Commission insists that the state is entitled to five-elevenths thereof. The court below decided that the state's share was only five-sixteenths and gave judgment accordingly. From this judgment the defendant appeals.

For the purpose of aiding in carrying on said exposition the Company, through the subscribers for its stock, contributed, or agreed to contribute, the sum of $6,122,450, of which the sum of $5,594,317.59 has been actually paid in; the state of California contributed out of the state Panama-Pacific International Exposition fund the sum of $4,941,-556.26, and the city and county of San Francisco contributed five million dollars. For the purposes of the decision as to the proportion the agreement of submission states that the contributions of said parties may be deemed to be six millions by the company, five millions by the state and five millions by San Francisco, making sixteen millions in all. The solution of the case depends on the meaning of the constitution relating to the state contribution, the statute passed in pursuance thereof, and the contract between the plaintiff and the defendant under which the contribution was made.

Section 22 of article IV of the constitution provides that: "No money shall ever be appropriated or drawn from the state treasury for the purpose or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state."

The authority for the contribution of the state to the Exposition is found in a proviso added to this section, by an amendment adopted in the year 1910. This proviso declares that a state tax should be levied to raise a fund of five million dollars to be used in establishing, maintaining, and supporting the Panama-Pacific International Exposition, to be given over for that purpose to a commission consisting

of the Governor and four other persons to be appointed by him, who should have the exclusive charge and control of the fund. It further declared that the legislature should pass all laws necessary to carry out its provisions, including the times, manner, terms, and conditions at and upon which such moneys could be drawn and the disposition to be made of any of the fund, or property obtained therewith, remaining at the close of the Exposition. The proviso concluded as follows:

"The commission herein created is authorized and directed to make such proper contracts with the Panama-Pacific International Exposition Company, a corporation organized under the laws of the State of California on the 22nd day of March, 1910, as will entitle the state of California to share proportionately with the contributors to the said Panama-Pacific International Exposition in the returns from the holding of said exposition at the city and county of San Francisco."

In matters of this character all intendments are in favor of the sovereign power. The rule of interpretation is that if any ambiguity exist in the language of the proviso or of the laws or contracts enacted and entered into in pursuance thereof, because of uncertainty in the language or of conflicting provisions in the different parts thereof, and two or more interpretations equally reasonable are deducible therefrom, that one is to be taken which is favorable to the state, rather than either of those which are against it. Where a public commission is granted power over property of the state, and the language of the grant contains terms which qualify the power, the qualifications are to be construed as conditions beyond which the grantee of the power cannot go, in so far as such qualifications are favorable to the state. The last clause of the proviso must be interpreted by the application of these rules.

The Commission is directed to make "proper contracts" for a certain purpose, that is, such contracts "as will entitle the State of California to share proportionately with the contributors to the said Panama-Pacific International Exposition in the returns from the holding of said Exposition."

This language is mandatory (see article IV, section 22), and it requires that such contracts shall be of a character which will secure the object expressed. It limits the power

of the Commission to that extent. The Commission did not have power to make a contract which does not entitle the state to share "proportionately with the contributors," or a contract which would give to the state less than its proportionate share of the return.

The Company is, of course, entitled to all the returns from the Exposition, except so far as the law or its own contracts may have otherwise provided. It is agreed that San Francisco donated its five million dollars outright, without exacting the condition that it should have any share of the returns. It was a contributor, but it was not a contributor entitled to a share or interest in the returns. Hence, neither the state nor the Company is required to share the surplus with San Francisco. The proviso above quoted makes it necessary, as a condition of the proposed donation by the state, that the state should share "proportionately with the other contributors" in the surplus. If one person shares "with" another in a fund, both must receive a part of it; otherwise there is no sharing between them, or of one with the other. One cannot share *with* another when the other neither takes, nor is entitled to take, any part whatever thereof. If one contributor is not entitled to any share and all the contributions are counted, in ascertaining the proportion, and all the returns except those due to the state by that proportion are paid over to the one other contributor who is entitled to share, the state would be sharing with a part of the contributors, but it would not be sharing with those contributors, "proportionately," and would not be sharing at all with the excluded contributor. It seems necessarily to follow that the only contributors to be taken into account, in determining the proportionate share of the state, are those who are themselves entitled to share, those who may lawfully share "with" the state and the Company in the returns. This conclusion is also indicated by a consideration of other attending facts and circumstances. The Company was a stock company with an authorized capital of ten million dollars. Its contribution was to be made wholly with money obtained by sales of its capital stock. Its stockholders were the real contributors. When the constitutional amendment was framed and adopted, it was expected that many persons would subscribe and pay for stock of the Company and that by that means a large part of the fund

needed for carrying on the Exposition would be raised, as, in fact, it was. These subscribers, and they alone, of all contributors, would be entitled by law to the surplus returns as dividends. It is reasonable to suppose that in framing the clause in the constitution securing to the state a proportionate share of the returns, these things were in mind, and that the only object was to place the state on an equal footing with the stockholders, in the event that there should be a surplus to divide, and that it was these contributors that were referred to as those with whom the state should share.

The statute passed by the legislature in pursuance of this proviso is not substantially different from the provision of the constitution. It empowers the Commission to make contracts to insure to the state its proportionate share in the returns from the Exposition, and to do all things deemed advisable to enable the state to receive such proportionate share. (Stats. 1911, 273.) The contract executed by the Commission with the Company also provides, substantially in the language of the constitution, that the state of California shall be entitled to share proportionately with the contributors to the Exposition in the returns from the holding of said Exposition. But it concludes with the specific provision that the state "shall receive in any distribution of property, dividends, or surplus and out of any remaining property or assets of said Exposition, an amount bearing the same proportion to the total amount of said assets, property, dividends, or surplus as the total contributions of the state of California to the Exposition shall bear to the sum total of all contributions from all sources to said Exposition." This passage, of course, would require all the contributions to be counted in ascertaining the proportion, and all of them to be excluded in the division except those of the state and of the Company. The state would be entitled, in that event, to only five-sixteenths of the total surplus, and as the Company is entitled by law to all the remainder, it would follow that the state would receive five-sixteenths, while the Company would receive eleven-sixteenths. The Company and the state would not by this method "share proportionately" in the returns, according to their contributions, nor proportionately according to all the contributions. The state would not be sharing with all the contributors, proportionately or otherwise, nor would the Company. The

effect of this clause of the contract was directly contrary to the provisions of the constitution as we have interpreted them, and the consequence is that it must be declared void, on the ground that the Commission exceeded its power in making it. Our conclusion is that the state is entitled to only five-elevenths of the net returns.

The judgment is reversed.

Wilbur, J., Richards, J., *pro tem.*, Lorigan, J., and Melvin, J., concurred.

Sloss, J., and Angellotti, C. J., dissented.

Rehearing denied.